# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   '23 MJ01023
)
Purple Apple iPhone 14, IMEI: 359702374236659, )
seized as Exhibit N-6 (Target Device 2) )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 | Possession with Intent to Distribute Methamphetamine and Cocaine and Conspiracy to Distribute |

The application is based on these facts:
See Attached Affidavit of DEA Special Agent Joseph I Clark, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Joseph Clark*
Applicant's signature

Special Agent Joseph I. Clark
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: ___03/22/2023___

*William V. Gallo*
Judge's signature

City and state: San Diego, California     Honorable William V. Gallo, U.S. Magistrate Judge
Printed name and title

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched in connection with an investigation of violation of Title 21, United States Code, Section 841(a)(1) is a **Purple Apple iPhone 14, IMEI: 359702374236659, seized as Exhibit N-6 (Target Device 2)**

**Target Device 2** is currently in the possession of the Drug Enforcement Administration (DEA) as evidence and located at 5810 Newton Drive, Carlsbad, California 92008.

## **ATTACHMENT B-2**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device 2** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, for the period of February 16, 2023, up to and including March 16, 2023:

  a. tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute controlled substances within the United States;

  d. tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of 21, U.S.C., §§ 841 and 846.

# AFFIDAVIT

I, Special Agent Joseph Clark, having been duly sworn, declare and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for warrants to search the following electronic devices:

- **Light Blue Apple iPhone 14, IMEI: 357447883512487, seized as Exhibit N-5 (Target Device 1) and**
- **Purple Apple iPhone 14, IMEI: 359702374236659, seized as Exhibit N-6 (Target Device 2)**

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846, Distribution and Possession with Intent to Distribute Controlled Substances (and Conspiracy to do the same), as further described in Attachments B-1 and B-2. The requested warrants relate to the investigation and prosecution of Luis Mizraim MIRAMONTES-Peraza and Isaac Natanael MIRAMONTES-Peraza for possession, with intent to distribute, approximately 12.71 kilograms (28 pounds) of suspected methamphetamine and 1.126 kilograms (2.48 pounds) of suspected cocaine. The **Target Devices** are currently stored as evidence at the DEA Carlsbad Resident Office located at 5810 Newton Drive, Carlsbad, California 92008.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with DEA since August 2019. I am currently assigned to the San Diego Field Division (SDFD) Carlsbad Resident Office, Group 61. I am a graduate of the DEA Academy in Quantico, Virginia.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of

controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and throughout the United States.

5. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.). A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual(s) responsible for importing and/or transporting the concealed narcotics in the United States. These communications can occur before, during and after the narcotics are imported into the United States and transported therein. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with co-conspirators immediately prior to and following their illicit transactions to negotiate prices and quantities, coordinate meeting times and locations, discuss the transportation through checkpoints, and then to discuss future transactions or future payments if the narcotics were "fronted" (delivered without being paid for in advance).

6. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and other portable electronic devices (such as Laptops, iPads, Tablets, etc.) of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to possess with the intent to distribute controlled substances within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the distribution of and/or the possession with the intent to distribute controlled substances within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of and/or the possession with intent to distribute of controlled substances within the United States;

    d. tending to identify travel to or presence at locations involved in the distribution of or possession with intent to distribute controlled substances within the United States, such as stash houses, residences used to prepare or process controlled substances, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

7. United States Border Patrol Agent (BPA) Oscar Andrade has worked for law enforcement for the past 15 years, all of which have been while stationed within the San Clemente Station Area (SCM). BPA Andrade has worked in highway interdiction for about 5 years and specifically in highway abatement from 2019-2020.

8. On March 16, 2023, BPA Andrade was conducting anti-smuggling operations along the Interstate 5 (I-5) Smuggling Corridor within the SCM Area of Responsibility. At approximately 11:55 p.m., BPA Andrade was stationary and parked facing the highway in an un-marked Border Patrol K-9 vehicle approximately one-half mile north of the Harbor Drive exit on the shoulder of the Northbound I-5 observing traffic. BPA Andrade was wearing his full Border Patrol uniform and clearly marked duty vest with a badge and Border Patrol markings on the vest. The night was clear and traffic was very light.

9. At approximately 12:05 a.m., BPA Andrade had been stationary at this location for approximately 10 minutes when he observed a black 2016 Volkswagen Jetta approach his position with what appeared to be two males with the front windows down. As the subject passed BPA Andrade the passenger looked directly towards BPA Andrade's location and then quickly looked towards the driver of the Volkswagen Jetta. BPA Andrade observed that no passengers in other vehicles reacted to his presence in the same manner as the male passenger of the Volkswagen Jetta. As the Jetta passed BPA Andrade's position, the driver promptly decelerated. BPA Andrade believed that the change in behavior by the driver of the 2016 Volkswagen Jetta was caused by his presence. As BPA Andrade drove toward the Jetta, he noticed the driver increase his speed to approximately 80 miles per hour, passing other drivers. The marked speed limit was 70 miles per hour or below. As BPA Andrade attempted to catch up to the Volkswagen Jetta, he observed the

vehicle switch lanes from lane 3 to lane 1 (passing lane) with no other vehicles in front of or behind it. BPA Andrade approached the vehicle on its passenger side and the passenger looked toward his location. The driver then decreased speed to approximately 60 miles per hour. BPA Andrade pulled back and observed the vehicle swerve in and out of lane number 2 despite no cars in front of him.

10. BPA Andrade pulled along the passenger side of the Volkswagen Jetta again and noticed that the driver was aggressively gripping the steering wheel with both hands and appeared to be sitting upright in a stiff and rigid position.

11. As the Jetta passed the San Clemente Border Patrol station, another Border Patrol vehicle was parked north of the station facing the highway and observing traffic. As the Volkswagen Jetta approached the location of the 2nd Border Patrol vehicle, BPA Andrade observed the driver of the Volkswagen Jetta decelerate again by pressing the brakes and moved to the number 2 lane. BPA Andrade observed the driver increase the speed of the Volkswagen Jetta to approximately 80 mph and almost contact the vehicle in front of the Volkswagen Jetta. BPA Andrade has observed this type of driving behavior in previous smuggling attempts as the driver appeared to be attempting to create distance from law enforcement agents. BPA Andrade repositioned his vehicle on the passenger side of the Volkswagen Jetta and observed the driver looking straight, sitting in a still and upright stiff position, and avoiding looking in the direction of BPA Andrade. BPA Andrade observed that the passenger of the Volkswagen Jetta had been looking at him during the majority of the time in which BPA Andrade was following the Volkswagen Jetta.

12. Due to the totality of the circumstances which included unusual driving behavior and what BPA Andrade believed to be nervousness by the driver, BPA Andrade believed a smuggling event and criminal activity was occurring. BPA Andrade notified the San Clemente Dispatch that he would perform a vehicle stop. BPA Andrade activated his emergency lights and sirens and stopped the 2016 Volkswagen Jetta at the Basilone Road exit approximately 3 miles north of the San Clemente Border Patrol station. This

vehicle stop occurred at approximately 12:15 a.m. BPA S. Meehan arrived at the location of the vehicle stop to provide support.

13. Border Patrol Dispatch informed BPA Andrade that the Volkswagen Jetta crossed the Mexico/United States border three days prior with two occupants. When BPA Andrade approached the Volkswagen Jetta from the passenger side and identified himself as a Border Patrol Agent, he asked the driver of the vehicle, identified as Luis Mizraim MIRAMONTES-Peraza, to provide identification. The driver handed BPA Andrade his Sentri card. BPA Andrade observed MIRAMONTES' hand shaking. BPA Andrade asked MIRAMONTES where he was traveling and MIRAMONTES stated he was traveling to Los Angeles, California. BPA Andrade asked MIRAMONTES to whom the vehicle belonged and MIRAMONTES stated it was his vehicle. BPA Andrade also asked the passenger for identification and the passenger was identified as Isaac Natanael MIRAMONTES-Peraza, the brother of the driver, Luis Mizraim MIRAMONTES-Peraza. BPA Andrade asked Luis MIRAMONTES if there were weapons or drugs in the vehicle. Luis MIRAMONTES stated he did not have weapons other than a pocket knife in the center console.

14. BPA Andrade asked Luis MIRAMONTES if they crossed the border on March 15, 2023. Luis MIRAMONTES stated they crossed the border in the Volkswagen Jetta one hour before they were stopped by the Border Patrol. BPA Andrade asked Luis MIRAMONTES if he was responsible for everything inside the vehicle and MIRAMONTES said, "Yes." BPA Andrade asked Luis MIRAMONTES if he had narcotics or anything illegal with him or in the vehicle. Luis MIRAMONTES state, "No." BPA Andrade asked both persons to get out of the vehicle. BPA Andrade asked Luis MIRAMONTES for consent to search his vehicle. Luis MIRAMONTES did not give his consent. BPA Andrade asked Luis MIRAMONTES for consent to conduct a canine sniff of his vehicle and Luis MIRAMONTES gave his consent for a canine sniff of his vehicle. BPA Andrade explained to Luis MIRAMONTES that his service canine partner, Keny,

was trained to detect concealed humans, the odors of marijuana, cocaine, methamphetamine, heroin, and ecstasy and their derivatives.

15. While conducting the free air sniff of the exterior of the vehicle beginning at the front of the vehicle, BPA Andrade's department issued canine, Keny, alerted to the rear quarter panel and trunk of the Volkswagen Jetta. BPA Andrade explained to Luis MIRAMONTES that his service canine had alerted to his vehicle and asked again if there was anything illegal in his vehicle, Luis MIRAMONTES stated he did not have anything illegal and gave consent to search his vehicle. While searching the vehicle, BPA S. Meehan noticed the spare tire in the trunk was oversized, heavy, and too large for the spare tire wheel well and appeared to not belong to that Volkswagen Jetta. BPA Andrade asked Luis MIRAMONTES if there was anything in the tire. Luis MIRAMONTES replied saying, "maybe that's the way I bought the car." BPA Andrade cut open the spare tire and noticed several packages wrapped in cellophane – 2 different types of packaging. BPA Andrade placed the driver, Luis Mizraim MIRAMONTES-Peraza, under arrest and BPA M. Nguyen placed the passenger, Isaac Natanael MIRAMONTES-Peraza, under arrest at approximately 12:25 a.m.

16. A field test of one of the sets of packages was conducted utilizing Nark II. The test yielded presumptive positive results for the characteristics of Methamphetamine. The test was conducted by BPA S. Meehan and witnessed BPA Andrade. I, DEA Special Agent (SA) Joseph Clark, arrived to assist in the investigation. I tested the other package of suspected narcotics using a 904 Reagent Test Kit, which yielded presumptive positive results for cocaine. The packages of suspected methamphetamine collectively weighed 12.71 kilograms (28 pounds), and the packages of suspected cocaine collectively weighed 1.126 kilograms (2.48 pounds).

17. On March 16, 2023, at approximately 5:06 a.m., DEA SA Paul Hedquist read Miranda Warnings to Luis Mizraim MIRAMONTES-Peraza, witnessed by SA Clark. MIRAMONTES initially stated he was willing to waive his Miranda rights and was willing to answer agent's questions. However, prior to signing the Miranda Waiver Form,

7

Luis Mizraim MIRAMONTES-Peraza made the following unsolicited comment, "I wasn't aware of what I was transporting but I knew I was transporting, like, a tire." Shortly after this comment, Luis Mizraim MIRAMONTES-Peraza verbally agreed for the second time that he was willing to waive his Miranda rights. He then signed the Miranda Rights Waiver Form. However, after SA Hedquist started questioning Luis Mizraim MIRAMONTES-Peraza about the details of the drugs in his car, he invoked.

18. On March 16, 2023, at approximately 5:18 a.m., SA Hedquist read Miranda Warnings to Isaac Natanael MIRAMONTES-Peraza, witnessed by SA Clark. Isaac MIRAMONTES stated he was willing to waiver his Miranda rights and was willing to answer agent's questions. He also initially consented to the search of his cell phone (**Target Device 2**), signed a consent to search form, witnessed by SAs Hedquist and Clark. Isaac MIRAMONTES maintained throughout the interview that he did not know there were drugs in the Volkswagen Jetta. Agents asked Isaac MIRAMONTES about the owner of a specific Mexican telephone number that sent approximately 16 text messages to Isaac MIRAMONTES on March 16, 2023, between the time period of 1:00 a.m. and 1:47 a.m., including a text message asking Isaac MIRAMONTES, "Chulo, WAY" (Where you at?). Isaac MIRAMONTES stated these texts were from a drug dealer, Ruben Ilams, and friend of his brother, Luis Mizraim MIRAMONTES-Peraza. Isaac MIRAMONTES had also stated that he knows his brother deals drugs.

19. SA Clark observed the locked screen of Luis MIRAMONTES' phone (**Target Device 1**) that displayed unread notifications and missed phone calls. The same Mexican telephone number discussed in the previous paragraph, identified as Ruben Ilam's telephone number, that repeatedly called **Target Device 2** called and texted **Target Device 1** within the same timeframe as **Target Device 2**.

20. Luis MIRAMONTES and Isaac MIRAMONTES were arrested and charged with violating Title 21, U.S.C., Section 841(a)(1), possession with intent to distribute methamphetamine and cocaine.

21. **Target Device 1** was found between the driver's seat and center console of the black Volkswagen Jetta occupied by Luis MIRAMONTES and Isaac MIRAMONTES at the time of arrest. Luis MIRAMONTES was shown **Target Device 1** and identified it as his. **Target Device 2** was found in a cup holder of the black Volkswagen Jetta occupied by Luis MIRAMONTES and Isaac MIRAMONTES at the time of arrest. Isaac MIRAMONTES was shown **Target Device 2** and identified it as his.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendants were using the **Target Devices** to communicate with others to further the distribution of illicit narcotics within the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the Defendants, to attempt to minimize the amount of time they were involved in their trafficking activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search **Target Device 1** and **Target Device 2** for data beginning on February 16, 2023, up to and including March 16, 2023.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the **Target Devices** and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

26. Law enforcement has not previously attempted to obtain the evidence sought by this warrant for **Target Device 1**. Consent was granted by Isaac MIRAMONTES to

review **Target Device 2** contents and a cursory search was done by investigating agents at the time of arrest. This warrant is being requested to obtain additional evidence contained within the device that was not obtained during the cursory search. After the post Miranda warning interview was complete, Isaac MIRAMONTES withdrew consent to search **Target Device 2**.

## CONCLUSION

27. Based on all of the facts and information described above, my training and experience, and consultations with other law enforcement officers, I submit there is probable cause to believe that searches of the **Target Devices** will yield evidence of Defendants' violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue warrants authorizing law enforcement to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Joseph Clark*
Special Agent Joseph Clark
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 22nd day of March, 2023.

*William V. Gallo*
HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE